## Squire Brown v. The People of the State of Illinois.

1. INSTRUCTIONS—*Weight of Evidence.*—On the trial of an action for selling intoxicating liquors to an habitual drunkard, it is not error to instruct the jury that the number of witnesses does not necessarily determine the weight of the evidence in any case, but the jury should take into consideration all the evidence and consider it all together, and determine from all the evidence in the case and from all the circumstances proven on the trial as to the weight of the evidence, and return a verdict accordingly.

2. WORDS AND PHRASES.—" *Weight of Evidence.*"—While the phrase " the weight of the evidence" is often used in instructions and properly understood to mean the preponderance of the evidence, it does not necessarily so mean, and is not to be always so understood.

**Indictment**, for selling intoxicating liquor to a person in the habit of getting intoxicated. Error to the County Court of McLean County; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the November term, 1895. Affirmed. Opinion filed May 16, 1896.

M. R. HARRIS, EDWIN H. MINER and EDMUND O'CONNELL, attorneys for plaintiff in error.

JOHN A. STERLING, State's Attorney, for defendant in error.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Plaintiff in error was convicted and fined on six counts, of which four charged the sale of intoxicating liquor to an intoxicated person named, and two the like sales to the same person then in the habit of getting intoxicated.

To the proof of his habit as charged, the defense contributed about as much as the prosecution, and except as to the alleged sales there was no controversy. Defendant and his barkeeper alike testified that he was often in the saloon, calling for liquor, when drunk and when sober, but each denied that he ever sold or gave him any or saw the other do so. But the jury, for some reasons, could not have believed this denial. Among them was the testimony of the alleged vendee that he had bought beer and whisky of the

Brown v. The People.

defendant and also of the barkeeper, when he was drunk and when he was sober, on occasions in number far exceeding those charged in the indictment; and that of his wife, that she had taken him out of the saloon four or five times, on one of which occasions she saw him tipping a glass to his lips; the facts were that he was often seen to be intoxicated and didn't get liquor at home, and that although there were other saloons in Bloomington, where he resided, yet he continued to so frequent that of the defendant, where, as was testified, he was so persistently and uniformly refused, for a reason that did not import a personal compliment nor invite his company.

It was for the jury, with their advantages, to determine the question of credibility arising upon this conflict of testimony; and having unanimously concurred in judgment as to how it ought to be determined, and been supported by the trial judge, who also saw and heard the witnesses, we are neither prepared nor disposed to overrule it.

It is said, however, that their finding may have been influenced by certain instructions given which are claimed to have been erroneous.

One was " that the number of witnesses does not necessarily determine the weight of the evidence in any case, but the jury should take into consideration all the evidence in the case and should consider it all together, and determine from all the evidence in the case and from all the circumstances proven on the trial, as to the weight of the evidence, and return a verdict accordingly;" under which, it is insisted, they may have returned their verdict upon what they considered a preponderance of the evidence, though not sufficient to convince them beyond a reasonable doubt of the defendant's guilt.

While the phrase, " the weight of the evidence," is often used in instructions and properly understood to mean the preponderance of the evidence, it does not necessarily so mean, and is not to be here so understood. This instruction expressly applies to " any case," that is, to every case, and holds that the verdict should depend upon the weight of the

evidence—which is the trier's honest estimate of its power
or tendency to convince, one way or the other, as to a mat-
ter of fact in dispute—to be made by a candid and thorough
consideration of each item as affected by a like consideration
of all others that are pertinent to the same question, and
not merely by the number of witnesses. And this is true
of all cases, whether there is sufficient evidence to convince
beyond a reasonable doubt, or only a bare preponderance,
or an even balance. This instruction does not attempt or
purport to state the rule as to the comparative weight, or
the measure of proof required to support a verdict in any
case, but leaves it to others; and if of itself this might be
considered misleading or absolutely erroneous, that rule
applicable to this case is in them too fully and clearly stated
to be misunderstood. In three of the eleven given for the
people it is declared to be such as to produce belief "beyond
a reasonable doubt," and three others explain what is meant
by such a doubt — clearly implying that the evidence, to
justify a conviction, must be sufficient to remove it. Of the
fourteen given for the defendant nine require proof against
him "beyond a reasonable doubt;" three expressly declare
that neither a mere preponderance, short of that, nor a
greater probability of guilt, merely, appearing by the evi-
dence or upon the doctrine of chances, is sufficient.

Another instruction was, "that if you believe from the
evidence in this case beyond a reasonable doubt that the de-
fendant or his bartender, within eighteen months just prior
to the finding of the indictment in this case, within the said
county, sold intoxicating liquor to Pearl Runyon, *the said
Pearl Runyon being then and there a person in the habit of
getting intoxicated*, then you should find the defendant
guilty," etc.; and the next following is in the same language
except that the words "the said Pearl Runyon being a per-
son then and there intoxicated," are substituted for those
above italicized — which are the clauses complained of as
assuming material facts alleged in the several counts to
which the instructions respectively apply.

"And that said Pearl Runyon was," would have been a

better form of expression than "the said Pearl Runyon be-ing." But if the one used was not intended as an absolute statement, which we think is probable, it is in this case a mere question of idiomatic accuracy which is unimportant to discuss or decide, inasmuch as the facts referred to were fully proved by the testimony of Runyon himself, his wife, two daughters and son-in-law, and by that of the defendant and his bartender as well. The latter said he was em-ployed as bartender from February 5, 1894, to June follow-ing; that during that period he refused to let Runyon have any liquor twenty-five or thirty times, and that he was always drunk when he called for it. It is not claimed in the argument that there was any controversy on these points. An assumption of these facts, therefore, could have done no harm and would not have been error. The judg-ment will be affirmed.